```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE

LOUIS N. GALLO, III           :    CIV. NO. 20-16416(RMB)
                              :
          Petitioner          :
                              :
     v.                       :          OPINION
                              :
DAVID E. ORTIZ, WARDEN        :
                              :
          Respondent          :
```

Petitioner Louis N. Gallo, IIII, a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 on November 18, 2020. (Pet., Dkt. No. 1.) Petitioner seeks immediate release from FCI Fort Dix to home confinement or supervised release and other injunctive relief. (Pet. ¶15, Dkt. No. 1.) For the reasons discussed below, the Court denies Petitioner's CARES Act claim, lacks jurisdiction over Petitioner's claim for Time Credits under the First Step Act, and the Court will stay Petitioner's Eighth Amendment claim, pending resolution of his emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

I.   THE PARTIES' ARGUMENTS

Petitioner seeks habeas relief on the following grounds: (1) the Bureau of Prisons granted his request for release to home confinement under the CARES Act, but the authorization was revoked

based on a faulty computation of his PATTERN recidivism risk score; (2) the Bureau of Prisons refuses to apply Petitioner's Time Credits earned under the First Step Act; and (3) Petitioner was infected with COVID-19 while in pre-release quarantine and continues to suffer lingering symptoms, without having seen a doctor in two months, in violation of the Eighth Amendment. (Pet., Dkt. No. 1.)

On November 30, 2020, Respondent filed an answer to the petition. (Answer, Dkt. No. 6.) Respondent opposes habeas relief, arguing that: (1) Petitioner failed to exhaust administrative remedies; (2) the Court lacks jurisdiction to review the BOP's home confinement decisions, which are committed to agency discretion by statute; (3) Petitioner is not entitled to Time Credits under the First Step Act; (4) the Court lacks jurisdiction over Petitioner's condition of confinement claims; (5) Petitioner's conditions of confinement do not violate the Constitution. (Id.)

In reply, Petitioner claims: (1) the BOP revoked Petitioner's release to home confinement under the CARES act after changing the PATTERN risk tool to delete consideration of FSA programs completed by inmates; (2) Respondent did not accurately measure Petitioner's need for programs under the FSA; (3) exhaustion of administrative remedies is futile; and (4) BOP has failed to mitigate the spread of COVID-19 at FCI Fort Dix, and acted in deliberate indifference

to inmate health and safety, based on a recent severe outbreak. (Reply, Dkt. No. 8 at 15-28.)[1] Petitioner fears re-infection with COVID-19 because he has medical risk factors for serious complications, according to the CDC Guidelines. (Petr's Mem., Dkt. No. 1-1 at 8, citing Ex. K, Dkt. No. 1-2 at 16.)

The Court directed Respondent to file a supplemental answer, describing the current conditions at FCI Fort Dix. (Order, Dkt. No. 10.) In his supplemental answer, Respondent stated that on December 24, 2020, three inmates tested positive for COVID-19 in Petitioner's housing area, the A-Wing of the Camp, and were moved to an isolation unit. (Suppl. Answer, Dkt. No. 11 at 1, citing Updated Declaration of James Reiser ("Updated Reiser Decl."), Dkt. No. 12.) Consequently, all inmates in the A-Wing were tested, and Petitioner was negative, but 32 additional inmates were positive. (Id.) Inmates in the A-Wing were placed in exposure quarantine and will be tested again before quarantine ends. (Id.) Twenty-seven inmates tested positive in the B-Wing of the Camp. All but one of the Camp inmates recovered as of January 15, 2021, according to CDC Guidelines. (Id. at 2.) Petitioner lodged an emergency motion for compassionate release under 18 U.S.C. § 3582 with his sentencing court on January 8, 2021. (Id., citing United States v.

---

[1] Page citations to documents on the Court's docket are the page numbers assigned by the Official Court Electronic Document Filing System, CM/ECF.

Gallo, 12-cr-20630.)[2] Respondent submits the Court should not extend habeas jurisdiction to conditions of confinement claims where other avenues for relief are available. (Suppl. Answer, Dkt. No. 11 at 2.)

II. DISCUSSION

    A. CARES Act Claim

        1. *The CARES Act*

Jurisdiction under 28 U.S.C. § 2241 exists, in relevant part, where a prisoner alleges "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). While jurisdiction exists over a claim that a prisoner is in custody in violation of federal law based on an erroneous statutory interpretation by an agency,[3] Petitioner has failed to state a claim.[4] Petitioner contends the BOP erroneously

---

[2] United States v. Howard et al., 12-cr-20630 (S.D. Fla. Jan. 8, 2021) (Emergency Mot. Reduce Sentence, Dkt. No. 451). Available at www.pacer.gov.

[3] See Cheek v. Warden of Fed. Med. Ctr., No. 20-10712, 2020 WL 6938364, at *2-3 (5th Cir. Nov. 24, 2020) ("A challenge to the BOP's or Attorney General's interpretation of the [CARES Act] would make judicial review appropriate"); Valenta v. Ortiz, No. CV 20-3688 (NLH), 2020 WL 2124944, at *2 (D.N.J. May 5, 2020) ("Petitioner's argument that he is in custody of the United States in violation of the CARES Act fits within th[e] definition [of 28 U.S.C. § 2241(c)(1), (3)."])

[4] There are disputed issues of fact raised in the petition, the answer, and the reply concerning Petitioner's exhaustion of available administrative remedies. Because exhaustion of administrative remedies under § 2241 is not jurisdictional, the Court will deny Petitioner's CARES Act claim on the merits without

computed his PATTERN score, which led to denial of release to home confinement because his score was low and not minimum. As discussed below, the BOP has discretion to consider a PATTERN Score as one of many factors in determining whether to release a prisoner to home confinement under the CARES Act, and the CARES Act does not prohibit the BOP from changing the PATTERN tool.

This Court has previously described the CARES Act and its implementation by the Attorney General and the BOP:

> Before the CARES Act was passed, 18 U.S.C. § 3624(c)(2) provided the BOP with the authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2) (effective July 19, 2019). As part of The CARES Act, Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under § 3624(c)(2). See Pub. L. No. 116-36, § 12003(b)(2). Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months.
>
> By memorandum dated March 26, 2020, the Attorney General directed the BOP to "prioritize the use of [its] various statutory

---

resolving the exhaustion issue. See Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241"); Gambino v. Morris, 134 F.3d 156, 172 (3d Cir. 1998) (judicially created exhaustion requirement is subject to futility exception); Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007) (describing differences between prudential and jurisdictional exhaustion requirements).

authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[5] The Attorney General specifically directed the BOP to consider the totality of the circumstances of each inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors including: the age and vulnerability of the inmate; the security level of the facility holding the inmate; the inmate's conduct while incarcerated; the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"); whether the inmate has a demonstrated and verifiable reentry plan that will prevent recidivism and ensure public safety (including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face at their current facility); and the inmate's crime of conviction. (Reiser, Decl. ¶3, ECF No. 5-2 at 2.)

On April 3, 2020, the Attorney General exercised authority under The CARES Act to further increase home confinement.[6] The Attorney General authorized the Director of the BOP to immediately maximize transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elton, and other similarly situated Bureau facilities where COVID-19 was materially affecting operations.

On April 5, 2020, the BOP gave the following guidance on COVID-19 and home confinement:

---

[5] Available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited February 10, 2021.)

[6] Available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf
(last visited on Apr. 16, 2020) (last visited February 10, 2021).

> Inmates do not need to apply to be considered for home confinement. Case management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. The Department has also increased resources to review and make appropriate determinations as soon as possible. While all inmates are being reviewed for suitability, any inmate who believes they are [sic] eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager. The BOP may contact family members to gather needed information when making decisions concerning Home Confinement placement.
>
> Importantly, on April 15, 2020, the BOP issued additional guidance regarding home confinement under the CARES Act, removing the requirement that the inmate serve up to two-thirds of the sentence imposed before eligibility for home confinement. (Reiser Decl., ¶5, ECF No. 5-2 at 3.) The new criteria include the following:
>
>> a. Primary or Prior Offense is not violent;
>>
>> b. Primary or Prior Offense is not a sex offense;
>>
>> c. Primary or Prior Offense is not terrorism;
>>
>> d. No detainer;
>>
>> e. Mental Health Care Level is less than IV;
>>
>> f. PATTERN (First Step Act tool used to determine risk of recidivism) is Minimum;
>>
>> g. No incident reports in past 12 months;
>>
>> h. U.S. Citizen; and

> i. Viable Release Plan.
>
> (Reiser Decl., ¶5, ECF No. 5-2 at 3,) An inmate's Unit Team evaluates an inmate to make a recommendation as to whether release to home confinement is appropriate. (Id., ¶6.)
>
> If an inmate is deemed appropriate for home confinement, the Unit Team will forward its recommendation to the Warden and then to the Residential Reentry Manger for a home confinement date in the inmate's release district. (Id.) If an inmate is granted home confinement, he or she will be quarantined for a 14-day period prior to transfer, based on the Attorney General's guidance. (Id.)

Furando v. Ortiz, No. CV 20-3739(RMB), 2020 WL 1922357, at *2–3 (D.N.J. Apr. 21, 2020), reconsideration denied, No. CV 20-3739(RMB), 2020 WL 3264161 (D.N.J. June 17, 2020).

2.  *Analysis*

"It is the BOP and the Attorney General who have the discretion [under the CARES Act] to consider the appropriateness of home release based on certain statutory and discretionary factors." Cheek v. Warden of Fed. Med. Ctr., No. 20-10712, 2020 WL 6938364, at *3 (5th Cir. Nov. 24, 2020). The Attorney General exercised his discretion to suspend the time limitation for home confinement under 28 U.S.C. § 3624(c)(2), and in doing so, on March 26, 2020, directed the BOP to consider the totality of the circumstances of each inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors. Although one of those discretionary factors the Attorney General

told the BOP to consider was an inmate's risk of recidivism using the PATTERN tool, the Attorney General did not direct the BOP to release prisoners with a minimum PATTERN score, nor did the Attorney General prohibit the BOP from making changes to the PATTERN tool. Rather, the Attorney General permitted the BOP wide discretion in determining when to release a prisoner to home confinement based on the risks posed by COVID-19 in the prisons.

Respondent submits that it denied Petitioner release to home confinement based on his prior criminal history. (Answer, Dkt. No. 4 at 39, citing Declaration of James Reiser[7] ("Reiser Decl.") ¶22 and Ex. 1.) The BOP has discretion under the CARES Act, through the Attorney General's Memoranda cited above, to consider a non-exhaustive list of factors in determining whether to release a prisoner to home confinement under § 3624(c)(2). Petitioner has not shown that the BOP failed to exercise the wide discretion it has been given by the Attorney General pursuant to the CARES Act. Thus, Petitioner has not established that he is in custody based on the BOP's erroneous statutory interpretation of the CARES Act, and the Court will deny Petitioner's CARES Act claim.

B.  First Step Act Claim

Jurisdiction is proper under 28 U.S.C. § 2241 where a prisoner challenges the duration of his confinement. Hare v. Warden Ortiz,

---

[7] James Reiser is a Case Management Coordinator at FCI Fort Dix. (Reiser Decl. ¶1, Dkt. No. 4-1.)

No. CR 18-588-1(RMB), 2021 WL 391280, at *1 n.2 (D.N.J. Feb. 4, 2021) (citing Leamver v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002)). Pursuant to 18 U.S.C. § 3624(g)(1)(A), a prisoner who "has earned time credits under the risk and needs assessment system ... in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment" may be released to a residential reentry center ("RRC"), home confinement or supervised release, subject to the provisions under § 3624(g)(1)(B-D) and (g)(2, 3). The Third Circuit has held that habeas jurisdiction exists over a prisoner's claim that the BOP miscalculated his sentence, where the claim "if successful, would result in his speedier release from custody[.]" Eiland v. Warden Fort Dix FCI, 634 F. App'x 87, 89 (3d Cir. 2015).

In his memorandum in support of his petition, Petitioner alleged "more than two months after Judge Bumb's ruling in Goodman, the Respondent's staff are still insisting that they do not have to apply FSA credits until January of 2022." (Petr's Mem., Dkt. No. 1-1 at 14.)[8] Petitioner's claim that the BOP has refused to apply his Time Credits under the First Step Act, if successful, would result in earlier release from custody if he has earned

---

[8] Because Petitioner raises a claim based on a statutory interpretation of the First Step Act, exhaustion of administrative remedies is excused. See Goodman v. Ortiz, No. CV 20-7582 (RMB), 2020 WL 5015613, at *3 (D.N.J. Aug. 25, 2020) (citing Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) ("exhaustion is not required with regard to claims which turn only on statutory construction") (citing Harris v. Martin, 792 F.2d 52, 54 n. 2 (3d Cir. 1986.))

sufficient credits for release prior to January 15, 2022, the date the BOP told Petitioner it would apply his Time Credits. In his reply brief, Petitioner also challenged the BOP's assessment of his need for certain categories of evidence-based-recidivism-reduction programs and productive activities, challenged the BOP's statutory interpretation concerning calculation of Time Credits under the FSA, and criticized the BOP's slow implementation of the FSA risk and needs assessment system.

The record is insufficient for the Court to evaluate whether Petitioner has earned sufficient Time Credits under the First Step Act, in accordance with this Court's statutory interpretation in Hare, 2021 WL 391280, to determine whether immediate application of the Time Credits earned by Petitioner would result in his speedier release from custody. The Court will direct Respondent to supplement the record by calculating Petitioner's Time Credits consistent with this Court's Opinion and Order in Hare, providing the date when Petitioner was assessed with each category of "need" under the FSA [including needs assessed upon intake that were not required to be reassessed under the FSA], and Petitioner's start date and completion date of all approved EBRR programs and PAs completed after December 21, 2018, for which he had a need. The Court will reserve determination of whether Petitioner is entitled to a writ of habeas corpus. If upon further review, as directed,

Respondent concludes that habeas relief is warranted, Respondent shall immediately advise the Court.

C.   Eighth Amendment Conditions of Confinement Claim

The Third Circuit Court of Appeals has not yet recognized jurisdiction under 28 U.S.C. § 2241 for a convicted prisoner to seek release based on allegations that his or her conditions of confinement violate the Eighth Amendment.[9] While the Supreme Court has indicated that such a claim might exist, the Supreme Court has not conclusively found jurisdiction under § 2241 for a conditions of confinement claim. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("we need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under s 1983"); Ziglar v. Abbasi, 137 S. Ct. 1843, 1862–63 (2017) ("we have left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus.")

---

[9] "Although the Court of Appeals in Hope v. Warden York County Prison, 972 F.3d 310 (3d Cir. 2020) held that immigration detainees could challenge their conditions of confinement as they relate to COVID-19 in a habeas petition under 28 U.S.C. § 2241, it did not expressly extend that rule to state prisoners who are in custody pursuant to a criminal judgment." Massey v. Estock, No. 1:20-CV-271, 2021 WL 195264, at *1 (W.D. Pa. Jan. 20, 2021). The same is true for federal prisoners in custody pursuant to a criminal judgment.

Petitioner has an emergency motion for compassionate release pending before his sentencing court. See supra n. 1. Given that there is another avenue for Petitioner's release from Fort Dix based on the COVID-19 outbreak, and that habeas jurisdiction has not been extended to conditions of confinement claims by convicted prisoners in the Third Circuit or the Supreme Court, this Court will stay Petitioner's Eighth Amendment claim under 28 U.S.C. § 2241, pending Petitioner's attempts to obtain release through a motion for reduction of sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). This does not preclude Petitioner from bringing an Eighth Amendment claim for injunctive relief under 28 U.S.C. § 1331, after exhausting administrative remedies[10] as required by 42 U.S.C. § 1997e(a).

III. CONCLUSION

For the reasons discussed above, the Court will deny the petition for writ of habeas corpus in part, order supplemental briefing on the First Step Act claim, and stay Petitioner's Eighth Amendment conditions of confinement claim pending determination of Petitioner's motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A)(i) in the Southern District of Florida.

---

[10] If an inmate's administrative remedy request to the Warden raises an "emergency" that "threatens the inmate's immediate health or welfare," the Warden shall respond [to the inmate's administrative remedy request] not later than the third calendar day after filing." 28 C.F.R. § 542.18.

An appropriate Order follows.

Dated: **February 16, 2021**

                                          s/Renée Marie Bumb
                                          **RENÉE MARIE BUMB**
                                          **United States District Judge**